Andrea NICHOLS, Plaintiff,

v.

GENERAL MOTORS CO., Defendant.

No. C–1–95–168.

United States District Court,
S.D. Ohio,
Western Division.

March 28, 1997.

Donald B. Hordes, Cincinnati, OH, for Plaintiff.

John M. Kunst, Jr., Mary Gabrielle, Hils, Cincinnati, OH, for Defendant.

## ORDER

HOGAN, United States Magistrate Judge.

This matter is before the Court on plaintiff's motion to file an amended complaint with jury demand (Doc. 62), defendant's memorandum in opposition (Doc. 66), plaintiff's reply (Doc. 69), defendant's supplemental authority in support of its memorandum in opposition to plaintiff's motion to amend (Doc. 71), and plaintiff's response to defendant's supplemental authority. (Doc. 72). The parties have consented to final disposition of this action by the undersigned United States Magistrate Judge. (See Docs. 18, 31, 50).

Plaintiff Andrea Nichols brings this sex discrimination action against her employer defendant General Motors Corporation alleging that she was sexually harassed and subjected to a hostile and abusive working environment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e et. seq. and the Ohio Civil Rights statute, Ohio Rev. Code § 4112. Plaintiff also asserts claims for intentional infliction of emotional distress and negligent retention of employees under Ohio law.[1]

On October 31, 1996, defendant filed a motion for summary judgment on plaintiff's original complaint. (Doc. 42). The motion has been fully briefed and argued and is currently under submission before this Court. After the Court heard oral argument

---

[1]. Plaintiff's original complaint alleged six causes of action, including tort claims for sexual harassment and negligent infliction of emotional distress brought under Ohio common law. (See Doc. 2, notice of removal, complaint, attached). On August 21, 1995, this Court entered a stipulation and order dismissing plaintiff's claims for common law sexual harassment and negligent infliction of emotion distress which were set forth in Counts Three and Five of the original complaint. (Doc. 22). The claims were dismissed pursuant to Fed.R.Civ.P. 41(a) which governs voluntary dismissals. (Id.). Plaintiff's proposed amended complaint lists ten counts. (See Doc. 62, motion to amend, proposed complaint, attached). Counts Three and Five are identical to the claims dismissed by this Court's August 21, 1995 order. (Compare Doc. 2, notice or removal, complaint attached with Doc. 62, proposed amended complaint attached). It appears from the face of the proposed amended complaint that plaintiff seeks to reinstate Counts Three and Five. However, she fails to present any authority or argument in support of such an amendment. Indeed, plaintiff's memorandum in support of her motion to amend states that she seeks leave to add four claims, two alleging retaliation, and two alleging disability discrimination. (See Doc. 62, motion to amend, p. 3). Therefore, to the extent that plaintiff seeks leave amend the complaint to include tort claims for sexual harassment and negligent infliction of emotional distress under Ohio common law, the motion to amend is denied.

on defendant's summary judgment motion, but before this Court rendered its decision, plaintiff filed the within motion for leave to amend the complaint.

Plaintiff seeks leave to amend her complaint to include four additional claims against defendant. Proposed Counts Seven and Eight, allege retaliation claims under Title VII and the Ohio Civil Rights statute, respectively. Plaintiff contends that defendant retaliated against her for prosecuting the present action by refusing to permit her to return to work from voluntary sick leave. Proposed Counts Nine and Ten allege disability discrimination claims under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Ohio Civil Rights statute, respectively. Plaintiff claims that defendant violated the ADA and Ohio law by refusing to return her to work after she was wrongly diagnosed with "intermittent explosive disorder" by defendant's examining psychiatrist, Dr. McElroy.

Defendant argues that plaintiff's motion to amend should be denied. Defendant contends that permitting plaintiff to amend at such a late stage in the proceedings would unduly prejudice defendant. Defendant also argues that plaintiff causes undue delay by failing to file her motion to amend at an earlier point in this litigation. Defendant contends that Counts Seven through Ten of the proposed amended complaint would not withstand a motion to dismiss; therefore, amendment should be denied as futile. Defendant argues that the newly asserted claims are subject to dismissal because: (1) plaintiff failed to file either retaliation or disability discrimination charges with the EEOC and thereby failed to exhaust her administrative remedies; and (2) plaintiff failed to comply with the grievance/arbitration provisions of the applicable Collective Bargaining Agreement (CBA) which requires plaintiff to submit such discrimination claims to arbitration.[2]

Plaintiff replies that amendment of the complaint should not be precluded by either her failure to file charges with the EEOC or by her failure to submit her claims to arbitration under the CBA. Plaintiff contends that her retaliation claims relate back to the original EEOC charges she filed as a predicate to the within action. Plaintiff also contends that failure to submit the claims to the grievance and arbitration procedure does not bar her from asserting her statutory civil rights claims in this Court. Plaintiff contends that such individual statutory rights are neither waived nor precluded by the terms of the CBA.

## PLAINTIFF'S MOTION TO AMEND IS GRANTED IN PART AND DENIED IN PART

The granting or denial of a motion to amend pursuant to Fed.R.Civ.P. 15(a) is within the discretion of the trial court. In general, leave to amend a complaint should be liberally granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, the Court may deny the motion to amend where the complaint, as amended, could not withstand a motion to dismiss. *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir.1994); *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 383 (6th Cir.1993); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation, Department of Housing and Urban Development, City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980). The Court should also consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, the repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994). The Court does not abuse its discretion in denying a motion to amend where, at the time the motion to amend was made, discovery was closed, new parties and claims were to be added by the amendment, and there was no explanation for the delay in filing the motion. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir.1992).

**2.** It is undisputed that plaintiff is a union employee and that her employment with defendant is governed by a Collective Bargaining Agreement entered into between defendant General Motors and the United Autoworkers Union (UAW) on October 24, 1993. (*See* Doc. 71, defendant's supplemental authority, CBA, Ex. B, attached).

*See also Duchon v. Cajon Co.,* 791 F.2d 43, 48 (6th Cir.1986).

### Plaintiff's Motion to Amend the Complaint to Include Disability Discrimination Claims is Denied For Failure to Exhaust Administrative Remedies

Plaintiff seeks leave to amend her complaint to add disability discrimination claims under the ADA and Ohio law. Plaintiff alleges that defendant's refusal to permit her to return to work, based on its expert's diagnosis of "intermittent explosive disorder" violates both federal and state law prohibiting discrimination against an otherwise qualified individual because of a perceived disability. Plaintiff contends that the motion is not filed for purposes of causing an undue delay nor is it based on any dilatory motive. Rather, plaintiff argues that the facts giving rise to these claims did not occur until October 30, 1996, when defendant formally notified plaintiff that she would not be permitted to return to work. Plaintiff also contends that there is no prejudice to defendant if the amendments are granted because any delay that occurs is a result of defendant's own illegal conduct. For the reasons set forth below, the Court finds that Counts Nine and Ten of plaintiff's proposed amended complaint would not withstand a motion to dismiss. Accordingly, plaintiff's motion will be denied as to these two claims.

In order for this Court to exercise subject matter jurisdiction over plaintiff's Title VII claims, first plaintiff must have unsuccessfully pursued administrative relief. *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). The ADA has incorporated the same administrative procedures set forth in Title VII and requires that plaintiff exhaust her administrative remedies before bringing a claim in federal court. 42 U.S.C. § 12117(a). *See Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir.1996). Thus, if plaintiff fails to first present her ADA claim to the EEOC, the claim cannot be brought before this Court. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir.1991). As a result, a plaintiff's federal claim is limited "to the scope of the EEOC investigation reasonably expected to grow out of the [ad-ministrative] charge of discrimination." *Id.* (quoting *EEOC v. Bailey Co., Inc.,* 563 F.2d 439, 446 (6th Cir.1977))(internal quotations omitted). Failure to bring a charge in an EEOC complaint precludes plaintiff from asserting such a claim before the Court. *Id.* at 545.

In the present case, plaintiff has not filed an administrative charge alleging disability discrimination under any law, state or federal. Compared to plaintiff's original complaint, proposed Counts Nine and Ten constitute new claims and are asserted under new theories of liability. These claims are clearly distinct from the hostile environment sex discrimination claims that were alleged in plaintiff's original EEOC charge. *See Ang,* 932 F.2d at 545. Plaintiff argues that these claims derive from facts and circumstances arising after the original complaint was filed. Nevertheless, under the ADA, plaintiff must exhaust her administrative remedies before seeking relief from this Court. Because plaintiff's proposed disability discrimination claims would not survive a motion to dismiss, plaintiff's motion to amend the complaint to add claims Counts Nine and Ten is denied.

### Plaintiff's Motion To Amend the Complaint to Include Retaliation Claims Will Not Be Denied For Failure to Exhaust Administrative Remedies

Plaintiff also seeks leave to amend the complaint to add retaliation claims under Title VII and the Ohio Civil Rights statute. As noted above, a plaintiff is generally precluded from asserting a Title VII claim before this Court if she fails to exhaust her administrative remedies prior to filing the federal action. (See supra, pp. 745–746). However, it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim that grows out of an earlier administrative charge properly before the Court. *Ang,* 932 F.2d at 546–47. Because retaliation claims, by definition, arise after the filing of an EEOC charge, this rule promotes efficiency by requiring only one

filing. *Id.* at 547. By contrast, retaliatory conduct that occurs prior to the filing of an EEOC complaint is distinguishable from conduct occurring afterwards and must be alleged in the original EEOC charge in order for this Court to exercise jurisdiction over such a claim. *Id.*

■ In the present case, the general requirement that plaintiff exhaust her administrative remedies before asserting a Title VII claim does not apply to proposed Counts Seven and Eight because they stem from the allegations plaintiff asserted in her original EEOC charge. *See Ang,* 932 F.2d at 546–47. Without addressing the merits of plaintiff's retaliation claims, the Court notes that Counts Seven and Eight allege that defendant retaliated against plaintiff for commencing and pursuing the within action by refusing to return her to work. On their face, these claims concern conduct that allegedly occurred after plaintiff filed her EEOC complaint. Because plaintiff alleges retaliation claims that stem from her prior administrative charge, a second EEOC filing is unnecessary. *Id.* at 547. Accordingly, plaintiff's motion to amend the complaint to include Counts Seven and Eight will not be denied for failure to exhaust administrative remedies. However, this does not end the inquiry. The Court now addresses defendant's argument that plaintiff is precluded from asserting the proposed retaliation claims because she failed to submit them to arbitration under the CBA.

### Plaintiff's Proposed Retaliation Claims Are Not Precluded By Her Failure To Submit the Claims to Arbitration Under the CBA

Defendant contends that plaintiff's motion to amend the complaint to add retaliation claims should be denied because plaintiff failed to submit these claims to arbitration. Defendant asserts that the CBA clearly requires plaintiff to submit her statutory retaliation claims to arbitration. Defendant also contends that because the CBA's arbitration provisions are mandatory, plaintiff is precluded from asserting such claims before this Court. Defendant argues that because these claims are precluded, Counts Seven and Eight cannot withstand a motion to dismiss and plaintiff's motion to amend should therefore be denied. Defendant relies heavily on *Austin v. Owens–Brockway Glass Container, Inc.* 78 F.3d 875 (4th Cir.1996) to support its argument. In further support of its argument, defendant cites this Court to *Brummett v. Copaz Packing Corporation,* 954 F.Supp. 160 (S.D.Ohio 1996)(Beckwith, J.) and *Jessie v. Carter Health Care Center, Inc.,* 930 F.Supp. 1174 (E.D.Ky.1996), two District Court decisions from within the Sixth Circuit.

Plaintiff argues that Counts Seven and Eight are not precluded by her failure to submit them to arbitration. Plaintiff contends that the CBA's nondiscrimination provisions do not preclude her from bringing the proposed retaliation claims. In support of her position, plaintiff cites this Court to authority from both within and from outside this Circuit.

It is important to note that there is no Sixth Circuit Court of Appeals decision that squarely addresses the issue of whether a CBA's general arbitration provision can function as a prospective waiver of plaintiff's right to assert individual statutory claims in a judicial forum. Thus, this Court must turn to District Court decisions from within the Sixth Circuit, as well as opinions from district and appellate courts in sister jurisdictions for guidance. An examination of the case law reveals a split of authority among the circuits and among the district courts within the Sixth Circuit on this issue. Because this Court finds that *Austin* was wrongly decided, the Court declines to follow the Fourth Circuit's precedent. Nor does the Court adopt the reasoning of the cases from within this Circuit which rely on *Austin.* In this Court's judgment, the *Austin* decision is based on a misinterpretation of the Supreme Court's opinion in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). For the reasons set forth more fully below, this Court finds that the dissent in *Austin* represents the more well-reasoned view. Accordingly, plaintiff's motion to amend the complaint to add retaliation claims will not be denied for failure to submit the claims to arbitration under the CBA.

## I. The Supreme Court's Gilmer Decision

In 1991, the Supreme Court addressed the question of whether a Registered Securities Representative could bring a claim against his employer under the federal Age Discrimination in Employment Act (ADEA) where the Representative entered an agreement under NYSE Rule 347 that required employment disputes to be submitted to arbitration. *Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650–51. The Court held that because the arbitration agreement was voluntary and enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq., plaintiff was required to submit his ADEA claim to arbitration and he was thereby precluded from asserting the claim in federal court. *Id.* at 26–27, 111 S.Ct. at 1652–53.

At first blush, it may appear that the *Gilmer* decision is controlling in the case at bar. However, it is important to note, as the *Gilmer* court did, that a significant distinction exists between an arbitration agreement voluntarily entered into by an individual employee and his employer, or related agency, and the arbitration provisions of a collective bargaining agreement between a company and the employees' union. Because of this distinction, the *Gilmer* Court was careful to distinguish its holding from an earlier Supreme Court case, *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

In *Alexander,* the Court held that an employee was not foreclosed from bringing a Title VII claim after an arbitration proceeding was conducted under the CBA even though the Title VII claim was based on the same facts that gave rise to the grievance. 415 U.S. at 49–50, 94 S.Ct. at 1020–21. As the Supreme Court stated in *Alexander*:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.

415 U.S. at 49–50, 94 S.Ct. at 1020.

The *Alexander* decision was based, in part, on a "mistrust of the arbitral process." *See Gilmer,* 500 U.S. at 34, n. 5, 111 S.Ct. at 1656, n. 5. While the *Gilmer* Court held that such mistrust was no longer an appropriate rationale to bar arbitration of statutory claims, nevertheless, the Court explained at length that the distinction described in *Alexander* between an employee's contractual rights under a CBA and his statutory rights under Title VII at issue was not abandoned. *See Gilmer,* 500 U.S. at 34–35, 111 S.Ct. at 1656–57. As the *Gilmer* Court noted, the Supreme Court's prior decisions have "expressed concern that in collective-bargaining arbitration the interest of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." 500 U.S. at 34, 111 S.Ct. at 1656 (quoting *Alexander,* 415 U.S. at 58, n. 19, 94 S.Ct. at 1024, n. 19)(internal quotations omitted). Thus, in deciding *Gilmer,* the Court specifically distinguished between an individual plaintiff's agreement to arbitrate and cases involving collective-bargaining agreements:

> There are several important distinctions between the [*Alexander*] line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration proceedings in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their union in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.

500 U.S. at 35, 111 S.Ct. at 1657 (emphasis added).

## II. The Austin Opinion and Its Progeny

More recently, the Fourth Circuit addressed the very issue that is before us: whether the arbitration provisions of a collective bargaining agreement can compel arbitration of plaintiff's statutory claims and thereby preclude plaintiff from asserting those claims in a judicial forum. *Austin v. Owens–Brockway Glass Container, Inc.* 78 F.3d 875 (4th Cir.1996). Relying on *Gilmer,* the Fourth Circuit held that regardless of whether the arbitration agreement is part of an individual employment contract or a collective bargaining agreement, if the agreement to arbitrate employment disputes is voluntary, plaintiff will be precluded from filing suit in federal court. *Id.* at 885–86. In two recent decisions by District Courts within the Sixth Circuit, the courts relied on *Austin* to dismiss the plaintiffs' claims. *See Brummett v. Copaz Packing Corporation,* 954 F.Supp. 160 (S.D.Ohio 1996)(Beckwith, J.); *Jessie v. Carter Health Care Center, Inc.,* 930 F.Supp. 1174 (E.D.Ky.1996). The *Brummett* and *Jessie* courts held that the relevant CBAs required the plaintiffs to submit their statutory claims to arbitration and therefore precluded them from asserting the claims in a judicial forum. See *Brummett,* 954 F.Supp. at 162–63; *Jessie,* 930 F.Supp. at 1176.

## III. The Austin Dissent and Other Cases Interpreting Gilmer

While the decisions discussed above constitute persuasive authority, upon closer analysis, this Court finds that the dissent in *Austin* represents the more well-reasoned approach to this issue. As Judge Hall succinctly stated in *Austin,*

> After its inventory of cases that follow the holding of [*Gilmer*], the majority concludes 'the only difference between these ... cases and this case is that this case arises in the context of a collective bargaining agreement.' I agree. The majority fails to recognize, however, that the only difference makes all the difference. A labor union may not prospectively waive a member's individual right to choose a judicial forum for a statutory claim.

*Austin,* 78 F.3d at 886–87 (Hall, J. dissenting). This reading of *Gilmer* is supported by several federal district court and appellate court decisions that limit *Gilmer's* holding to cases where an individual plaintiff entered into an agreement requiring arbitration of statutory claims, rather than extending it to cases where the arbitration provisions are part of a CBA. For district court opinions from within the Sixth Circuit that reject the majority's reasoning in *Austin see DiPuccio v. United Parcel Service,* 890 F.Supp. 688, 691–92 (N,D.Ohio 1995)(because of the distinctive nature of collective bargaining agreements, plaintiff's ADA claim is not waived by the CBA's general arbitration clause); *Jackson v. Quanex Corporation,* 889 F.Supp. 1007, 1010–11 (E.D.Mich.1995)(defendant's reliance on *Gilmer* fails to take into account the important circumstance that the arbitration clause it seeks to enforce is contained in a CBA. The *Alexander* Court's holding that union members may not be compelled to arbitrate civil rights claims is not disturbed by *Gilmer* and Court declines to hold that by virtue of CBA, plaintiffs bargained away their right to assert statutory civil rights claim in courtroom). For circuit court opinions holding that a CBA's arbitration provisions cannot preclude assertion of individual statutory rights in a judicial forum see *Bates v. Long Island RR Co.,* 997 F.2d 1028, 1034 (2d Cir.1993)(while courts ordinarily defer to dispute resolution procedures in CBA when dispute arises out of collective bargaining process, where employee's statutory civil rights have been violated, arbitration should not be the sole avenue of protection); *Tran v. Tran,* 54 F.3d 115, 117–118 (2d Cir.1995)(nothing in *Gilmer* decision casts doubt on prior cases holding that CBA's mandatory arbitration provisions do not preclude plaintiff from asserting individual statutory rights in federal court). *EEOC v. Bd. of Governors of State Colleges and Universities,* 957 F.2d 424 (7th Cir.1992)(it is well established that unions cannot waive employees' Title VII rights through collective bargaining). See also *Block v. Art Iron, Inc.,* 866 F.Supp. 380, 385–87 (N.D.Ind.1994)(finding that Seventh Circuit would not agree with *Austin* Court insofar as *Austin* permits waiver of individual statutory claims by way

of general arbitration clause and CBA fails to specifically provide that plaintiff's statutory claims are subject to compulsory arbitration); *Bintner v. Burlington Northern, Inc.*, 857 F.Supp. 1484, 1488–90 (D.Wyo.1994)(denying defendant's motion to dismiss and declining to accept argument that plaintiff is required to submit federal statutory claims, including Title VII claims, to grievance and arbitration procedures under CBA); *Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 995 (D.Or.1994) (*Gilmer* holding that plaintiff must submit statutory claims to arbitration does not apply to arbitration provisions under CBA); *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 147 (D.Conn.1993)(as general rule, CBA cannot require employee to arbitrate individual statutory claims.)

As demonstrated by the above-cited cases, the weight of authority supports a broad reading of *Gilmer*: a CBA cannot require employees to arbitrate their individual civil rights claims. See *DiPuccio, EEOC, Bintner, Schmidt,* and *Claps,* supra. However, even if this Court adopts a more narrow reading of *Gilmer,* at a minimum, plaintiff's failure to exhaust available grievance procedures does not bar her assertion of Title VII claims, unless the CBA expressly provides that individual statutory claims are subject to mandatory arbitration and that employees thereby waive their right to assert such claims before a judicial forum. See *Claps,* 819 F.Supp. at 147, n. 6. See also *Art Iron,* 866 F.Supp. at 387. Furthermore, this Court believes that if the Sixth Circuit were to address this issue it would agree with our reading of *Gilmer,* at least to the extent that an arbitration clause in a CBA cannot prospectively waive an individual plaintiff's statutory rights unless the CBA expressly and explicitly so states. See *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309 (6th Cir.1991)(where plaintiff entered into an arbitration agreement as part of Securities Registration form, Sixth Circuit held that *Gilmer* limited the scope of *Alexander* "to circumstances in which the agreement to arbitrate did not include a waiver of statutory rights independent of collective-bargaining agreement").

## The CBA Neither Expressly Requires Plaintiff to Submit Her Statutory Civil Rights Claims to Arbitration Nor Precludes Her From Asserting Such Claims In This Court

■ The CBA at issue in this case provides in pertinent part:

(6a) It is the general policy of General Motors and the UAW that the provisions of this Agreement be applied to all employees covered by this Agreement without discrimination based on race, color, religion, age, sex, national origin or individuals with disabilities as required by appropriate state and federal law. Any claims of violation of this policy or claims of sexual harassment may be taken up as a grievance. . . .

The grievance and arbitration procedure shall be the exclusive contractual procedure for remedying such discrimination claims.

(Doc. 71, defendant's supplemental authority, Ex. B, CBA provisions attached). Clearly, the CBA does not contain an express waiver of plaintiff's right to assert her individual statutory claims in a judicial forum, nor does it expressly provide that plaintiff must submit her statutory claims to arbitration. Rather, the CBA provides that discriminatory conduct that violates the Agreement is subject to the grievance and arbitration procedures. Furthermore, the CBA clearly states that it is "the exclusive contractual procedure for remedying such claims." This language reinforces this Court's view that the CBA grievance procedure at issue in this case is designed to address violations of an employee's contractual rights, not her individual statutory civil rights. In other words, while the Union and the Company may wish for the contractual boundaries regarding discriminatory conduct to be the same as those proscribed under Title VII and similar statutes, such an agreement does not vitiate plaintiff's right to assert statutory civil rights claims in federal court. Thus, even under the most narrow reading of *Gilmer,* in the present case, plaintiff's proposed retaliation claims are not precluded from resolution in this Court. Counts Seven and Eight are not subject to dismissal for plaintiff's failure to

pursue arbitration under the CBA. Accordingly, the Court rejects defendant's argument that plaintiff's motion to amend should be denied on these grounds.

### Plaintiff's Motion to Amend the Complaint is Granted as to Counts Seven and Eight

As set forth above, plaintiff's motion to amend the complaint to add retaliation claims will not be denied either for failing to file an EEOC charge or for failing to comply with the CBA grievance and arbitration provisions. The Court now turns its attention to the other factors it must consider when ruling on a motion to amend.

 First, there is no evidence of undue delay on plaintiff's part inasmuch as she was not notified of defendant's refusal to permit her to return to work until October 30, 1996. Plaintiff filed the motion to amend on January 7, 1997. The two month period between defendant's decision concerning plaintiff's return to work and plaintiff's motion to amend does not constitute an unreasonable delay. Second, there is no evidence of bad faith or dilatory motive on plaintiff's part. Third, because this is plaintiff's first amended complaint, there is no basis to conclude that plaintiff failed to cure prior deficiencies by amendments previously allowed. Finally, while defendant may be somewhat prejudiced by the addition of these claims, such prejudice, if any, is not outweighed by plaintiff's right to be afforded an opportunity to test her claims on the merits. See *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Plaintiff sought leave to amend within a reasonable time after the facts giving rise to her new claims occurred. Title VII permits a plaintiff to allege retaliation that grows out of a prior EEOC charge without filing a second administrative complaint. Thus, it seems reasonable to assume that if alleged retaliatory conduct occurs after a Title VII complaint has been filed, some cases may require that discovery be reopened to permit the parties to pursue the retaliation claims. Furthermore, to the extent that the amended complaint alleges the same claims as the original complaint, the Court will not stay decision on defendant's summary judgment motion which is currently under submission. Thus, the Court does not find that defendant is prejudiced such that plaintiff's motion to amend to include Counts Seven and Eight should be denied.

### IT IS THEREFORE ORDERED THAT:

1) Plaintiff's motion to amend the complaint to include Counts Seven and Eight is GRANTED;

2) Plaintiff's motion to amend the complaint to include Counts Nine and Ten is DENIED;

3) Plaintiff's request that the Court stay its ruling on defendant's summary judgment motion currently under submission is DENIED; and

4) Plaintiff MUST file her amended complaint in accordance with this order WITHIN SEVEN DAYS of the filing date of this order.

SO ORDERED.